REUBEN BOLLMAN, PLAINTIFF IN ERROR, v. JAMES LUCAS, DEFENDANT IN ERROR.

1.  **Witnesses:** EXAMINATION: OPINIONS.  A witness on his examination-in-chief, or re-examination by the party calling him, when on account of his possessing special knowledge, skill, or experience, is permitted to give his opinions or judgment on a question of quality or values, if he is permitted to give the source of his special knowledge, experience, or skill, it will be confined to general statements.  And when he is permitted to narrate the facts and circumstances of a special transaction, outside of the case on trial, for the purpose of enabling

the jury to compare the facts and results of such transaction with those of the case on trial, and in that manner impress them with the soundness of his opinion or judgment; *Held,* Error.

2. **Sale:** FRAUD. To avoid a sale upon the ground that it is fraudulent as to creditors, the purchaser must have knowledge of the fraudulent purpose of the seller, or have notice of such facts tending to show a fraudulent purpose as would put a man of ordinary prudence on inquiry. *Temple v. Smith,* 13 Neb., 513.

ERROR to the district court for Knox county. Tried below before CRAWFORD, J.

*Cleland & Lothrop, Wigton & Whitham, Bartlett & Cornish,* and *E. F. Gray,* for plaintiff in error, cited : *Tootle & Maule v. Dunn,* 6 Neb., 93. *Templin v. Smith,* 13 Id., 513. *Brunswick v. McClay,* 7 Id., 137. Wait Fraudulent Conveyances, Secs. 379, 380, and 381. *David v. Birchard,* 10 N. W. R., 557.

*H. C. Brome,* for defendant in error, cited : *Bickler v. Kendall,* 24 N. W. R., 518. *Clemens v. Brillhart,* 17 Neb., 337. *Boggs v. Thompson,* 13 Id., 405. *Gray v. St. John,* 35 Ill., 222. *Shelley v. Boothe,* 73 Mo., 74. *Crawford v. Kirksey,* 55 Ala., 282.

COBB, J.

This was an action of replevin in the district court of Knox county. The plaintiff in error, defendant in the court below, is the sheriff of said county. His answer was a general denial, and on the trial he sought to justify the taking and detention of the property replevied, which consisted of a stock of general merchandise, under five several orders of attachment issued in as many several actions pending in the district court of said county against McClintock & Wilson, whose property he claimed the said replevied goods to be.

There was a trial to a jury with a verdict and judgment for the plaintiff. The defendant brings the cause to this court on error, and assigns fifty-one errors. It is not deemed necessary to set out these assignments here, as without passing upon either of the other questions involved in the case this opinion will be confined to those arising upon the admission of certain testimony offered by the plaintiff, and the giving and refusal by the court of certain instructions hereinafter specifically referred to.

From the evidence of the plaintiff, defendant in error, it appears that McClintock and Wilson, of Creighton, were engaged in mercantile business, having as their stock in trade the goods in controversy. They owed him the sum of fifteen hundred dollars on the original purchase of the said business by them. This debt was long past due, and had been renewed, or payment postponed from time to time. About the 1st of June, 1885, they wrote to him at his residence in Wisconsin, to the effect that they were likely to be pushed by other creditors, etc. This induced him to come out to Creighton to look after and collect the said debt. Almost immediately upon his arrival at Creighton, the attorney of Paxton & Gallagher, of Omaha, who had a demand of $1,719.08 against McClintock & Wilson, appeared on the scene and threatened to take out an attachment. Thereupon Lucas, the defendant in error, purchased the stock of goods from McClintock & Wilson, and taking out of the consideration his own claim, also paid the said claim of Paxton & Gallagher, and claims of other creditors of McClintock & Wilson, held by the banks at Creighton against them for collection, amounting in all to the sum of $4,575,·the consideration named in the bill of sale thereupon executed and delivered by the said McClintock & Wilson to Lucas. It appears that the stock of goods and book accounts described in and conveyed by the said bill of sale to Lucas, constituted the entire, or nearly the entire property and assets of the said

McClintock & Wilson, leaving the claims of the attaching creditors, amounting to $4,148.42 unprovided for. It is quite impossible to arrive at the value of the goods and accounts from the evidence, but it may be assumed that the evidence tends to fix it at nearly twice the amount stated as the consideration of the bill of sale. No invoice of the stock was taken before the sale, but one was commenced immediately after the transfer but never completed, having been interrupted by the attachment proceedings. Invoices and appraisements were however made of the goods taken on the several orders of attachment, covering the entire stock of goods, but the appraiser scarcely pretended to place a true value upon them. The goods were also appraised when taken by the coroner on the order of replevin. The amount of such appraisement appears to have been $5,502\frac{42}{100}$.

Upon the trial Mr. S. J. G. Irwin, not Cowin, as plaintiff in error has it in the brief, was sworn as a witness on the part of the plaintiff. This witness was also one of the appraisers summoned by the coroner to appraise the goods, and who assisted in the discharge of that duty. Upon his examination-in-chief he was asked by counsel for the plaintiff:

Q. What were those goods worth on that market at that time?

He answered:

A. Probably thirty-five or thirty-six hundred dollars.

The witness was then cross-examined by counsel for the defendant. And upon his re-examination counsel for plaintiff asked him the following question:

Q. Mr. Irwin, how long was it after this appraisement was made by you that you took charge of another stock of goods there in the town of Creighton as assignee?

Defendant objected as not being proper re-examination, and as being immaterial and incompetent, which objection was sustained by the court. Counsel for the plaintiff then

submitted the following offer: "I offer to prove, upon re-examination, by the witness, that a short time or some time after the appraisement was made, that he had been interrogated with reference to—within six months afterwards, at Creighton in Knox county, as assignee he took charge of a stock of general merchandise, similar in character to the stock appraised in this case, and contained in the same room in which this stock had been kept, and that he sold the same at retail for cash for some two months, and closed the bulk out, and sold the bulk for cash—the balance. That the stock of goods was a better selected and more desirable stock than the one in controversy in this case, and that the total amount realized was less than fifty-five per cent of the cost price of the stock." Defendant objected as being incompetent and not proper re-examination, and in no particular fixing the value of the goods in question. The objection was overruled by the court. Thereupon counsel asked of the witness the following question:

Q. You may state how long after this appraisement was it that you took charge of this other stock of goods?

Defendant objects as being incompetent and not the proper way to ascertain the value of the goods in controversy, and not proper re-examination. Objection sustained by the court. Thereupon counsel for the plaintiff asked of the witness the following question:

Q. You may state whether or not you took charge of a stock of goods in Creighton since this appraisement, as assignee?

Defendant objects as being incompetent, and not the proper way to ascertain the value of the goods in controversy, and not proper re-examination. Objection overruled by the court. Whereupon the witness answered:

A. Yes, sir, I did.

Counsel continued the examination:

Q. When was that?

Counsel for defendant objected as last above, which objection was overruled by the court, and witness answered :

A.  I took charge of the store on the 18th day of January, 1886.

Q.  You may state whether or not the goods that you took charge of were of the same class and character of the goods contained in the stock that you appraised ?

Defendant objects as being incompetent, not the proper way to ascertain the value of the goods in controversy, and not proper re-examination, and because the period is too far removed, some seven months from the time of the replevin in this case.  The objection was overruled, and the witness answered :

A.  Yes, sir.  They were similar and the same class of goods.  It was a general stock.

Q.  Well, how did they compare with the stock in, controversy in quality?

Defendant objected as last above, with the same ruling,. and witness answered :

A.  They were a little newer stock of goods.  They hadn't been on the shelf as long.  They were a very good stock of goods.

Q.  What do you say as to whether they were a better stock than the McClintock & Wilson stock ?

Defendant objected as above, with the same ruling.

A.  I think they were some better.  As I said before, they were not quite as old a stock of goods.

Q.  Now you may state, if you know, whether there was any actual difference in the value of that class of goods—that is, whether or not that class of goods were different in value, or their value was different, in January, 1886, when you took possession of this stock, from what it was in June, 1885, when you appraised the other stock?

Same objection and same ruling.

A.  Taking the stock in general, I don't think there

would be any difference particularly ; of course there may have been a little difference in a few articles.

Q. You may state, if you know, in what manner this last stock was disposed of—how it was handled?

Same objection and same ruling.

A. That is, you want to know from the time the assignment was made?

Q. Yes, sir.

A. The sheriff first took charge, and the sheriff sold goods out of the store. I think in the neighborhood of thirty days, at retail, and I went in on the 18th day of January, and I sold goods until March. Some time, I think about the 8th or 9th, that I closed the store and took an account of what I had to sell—the balance that was in the store—and sold the bulk for cash.

Q. Now, then, sir, you may state if you know what per cent of the cost price, with the freight added, of the goods was made in that sale?

Objection as before, with the same ruling.

A. Yes, sir.

Q. You testified upon your direct examination that the goods in controversy in this action were worth, at the time that you appraised them, thirty-five or thirty-six hundred dollars. You also testified, in answer to Mr. Gray, that you had appraised the goods at something less than fifty-six hundred dollars. You may explain to the jury why you make the two different valuations.

Objection as above, and as leading. Same ruling.

A. I fixed it the same as this last stock of goods that I have just handled. We didn't realize as much as we supposed we would on that stock, and I put this the same as I did on the other stock. I rather thought we got it a little high on that appraisement. I never had had any experience at the time that we took that appraisement, in selling goods like that—in selling bankrupt stocks.

I know of no principle of law or theory of evidence

upon which the above rulings of the trial court can be justified. While the testimony of witnesses is usually directed to facts, it is, in such cases, confined to the facts of the case on trial. And when an expert, or one who, on account of his possessing special knowledge or experience, is permitted to give his opinion or judgment on a question of quality or values, if he is permitted to give the source of his special knowledge, experience, or skill, he will be confined to general statements and will not be permitted to narrate the facts and circumstances of a special transaction for the purpose of enabling the jury to compare the facts and results of such transaction with those of the case on trial, and in that manner impress them with the soundness of his opinion or judgment. It is probable that the questions objected to would be permissible on cross-examination, but not in the examination of a witness in chief or upon his re-examination by the party calling him. These propositions are deemed so elementary as to render the citation of authorities unnecessary.

The following instructions were given to the jury by the court on its own motion :

"1st. The plaintiff brings this action in replevin against the defendant to recover the stock of goods which is described in the petition. The plaintiff alleges that on the 1st day of July, 1885, he was the owner of and entitled to the immediate possession of said stock of goods, and that the defendant wrongfully and unjustly detained said stock of goods from the plaintiff for the space of nine (9) days, to the damage of plaintiff in the sum of $500. The answer of the defendant is a general denial, but he claims that the plaintiff was not the owner of or entitled to the immediate possession of the property replevined. Defendant claims that the plaintiff purchased the goods in controversy from McClintock & Wilson, in fraud of the creditors of said McClintock & Wilson, and that he, defendant, is entitled to the possession of the goods in con-

troversy, by virtue of certain attachments sued out by creditors of McClintock & Wilson in suits against McClintock & Wilson, in which he, defendant, seized the goods in controversy, and these are the issues you are to try and determine.

" 2d.    The burden of proof is on the plaintiff to show that at the commencement of this action he. was entitled to the possession of and was the owner of the goods in controversy, and in order to recover the plaintiff must satisfy you of these facts by a fair preponderance of the testimony.

" 3d.    The burden of proof is on the defendant to establish fraud.

" 4th.    It is for the jury to say, from all the facts and circumstances surrounding the transaction between the plaintiff Lucas and McClintock & Wilson in the sale and purchase of the goods in controversy, whether it was bona fide and free from fraudulent intent to hinder, delay, defeat, or defraud the creditors of McClintock & Wilson, or whether it was for fraudulent purpose, and render your verdict accordingly.

" 5th.    If you find that at the time of the commencement of this action plaintiff was the owner of and entitled to the possession of the property in controversy, then you will so say by your verdict, and assess him nominal damages of one cent for the wrongful detention.

" 6th.    If you find for the defendant then you will say by your verdict that at the commencement of this action the defendant had a special ownership in and was entitled to the possession of the property in controversy, and also find value of such possession, which will be the total amount of the various attachments held by the sheriff against McClintock & Wilson in favor of the various creditors, amounting to $4,782.92, unless you find the value of the property to be less than that sum, in which case it will be the value of the property replevined.

"7th. When you have retired to your jury room to delib-erate upon your verdict, you will select one of your number as your foreman, and when you have agreed upon your verdict your foreman will sign it, and you will return into court with your verdict in a body."

And the court further instructed the jury, upon the motion and request of the plaintiff below, as follows:

"1st. The plaintiff claims to be the owner. of the property in controversy in this action, and claims to have purchased the same on the 18th day of June, 1885, at Creighton, Nebraska, from the firm of McClintock & Wilson, who were then the owners of said stock. It is not disputed that McClintock & Wilson were the owners of the property in controversy at the time of the alleged purchase by plaintiff, but defendant claims that such sale, if made, was fraudulent and void as to creditors, and passes no title to plaintiff as against creditors of McClintock & Wilson. You are instructed that upon the question of fraud in this sale, the burden of proof is upon the defendant, and before the defendant can recover in this action, he must have satisfied you by a fair preponderance of the evidence that the sale of the property in controversy by McClintock & Wilson to said Lucas was made in fraud of the creditors of said McClintock & Wilson, and that the plaintiff, James Lucas, shared in such fraudulent purpose at the time of said sale."

"2d. You are instructed that the sale of property in good faith for a valuable consideration when there is a delivery of the property sold, passes the title to the purchaser, and the fact that the seller was in debt will not of itself invalidate the sale, although the purchaser may have known that fact at the time of the purchase, and the fact that McClintock & Wilson were in debt at the time plaintiff purchased the property in controversy, and plaintiff knew that fact, will not of itself invalidate the sale.

"3d. You are instructed that, although the sale by

McClintock & Wilson to plaintiff may have had the effect to hinder and delay the creditors of McClintock & Wilson in the collection of their debts, this fact alone will not render the sale fraudulent and void. A creditor, however insolvent, may lawfully sell his property, even for less than it is worth, if it is done with a *bona fide* intention of applying the proceeds in discharge of a legal liability.

" 4th.  A person who is indebted and unable to pay all his debts in full, has a right to prefer any one or more of his creditors to the exclusion of the others, and in payment of a *bona fide* indebtedness to or of his creditors, a debtor may exhaust the whole of his property so as to leave nothing for the other creditors who are equally meritorious, and if you find from the evidence in this case that McClintock & Wilson were indebted to plaintiff at the time of said sale, and that plaintiff for the purpose of protecting himself, and for no other purpose, purchased the stock of goods in controversy, and that such purchase was not made for the purpose of enabling McClintock & Wilson to defraud their creditors, then your verdict will be for plaintiff, and the fact that such purchase prevented other creditors from collecting the amount due them from McClintock & Wilson will not affect the rights of the parties to this suit.

" 5th.  There is no law requiring a debtor, however insolvent, to keep his property until a creditor can attach it or have it levied upon by an execution.  Such a debtor may, in good faith, and for a valuable consideration, sell all his property and apply the proceeds thereof to the payment of any one or more of his creditors, as he may see fit, if done in good faith, although it be done with the intention of defeating his other creditors.  And if you find from the evidence that McClintock & Wilson sold the property in controversy in good faith to plaintiff for the *bona fide* purpose of paying a debt then due him from them, and that the balance of the purchase price was paid by plaintiff

to other creditors of said McClintock & Wilson by their di-
rection and in good faith, then you are instructed that such
transaction is valid and your verdict will be for plaintiff in
this case.   And the fact, if it be a fact, that McClintock
& Wilson intended by such sale to prevent other creditors
from collecting the amount due them will not of itself ren-
der such sale fraudulent nor affect the rights of plaintiff
in this case.

. "6th.   You are instructed that a conveyance of property
made in good faith to pay an honest debt is not fraudulent,
though the debtor be insolvent and the creditor aware at
the time of the sale that it will have the effect of defeating
other creditors in the collection of their debts.   A debtor
may lawfully prefer one creditor, paying him in full, thus.
exhausting his whole property and leaving nothing for
his other creditors.   A debtor in a failing circumstance
has a right to prefer one creditor from another creditor.

"7th.   You are instructed that in order to render the
bill of sale from McClintock & Wilson to the plaintiff
Lucas fraudulent and void as to creditors, the intent to
defraud must have existed in the mind of Lucas at the
time the transfer was made.   Lucas' subsequent conduct
in dealing with the property, and his conversation with the
witness Fuhrman and others, as given in evidence, will not
of themselves render the sale void.   Such dealings and,
conversations can only be considered by you in determining
whether or not the intent to defraud creditors existed on
on the part of plaintiff at the time the sale was made.

"8th.   Fraud is never presumed.   It must be clearly
proven.   The law presumes the purchase by plaintiff of
the property in controversy in this case to have been an
honest purchase and in good faith, and unless you find that
defendant by a fair preponderance of the evidence has es-
tablished the fact that such purchase was made by plaintiff,
Lucas, for the fraudulent and dishonest purpose of hinder-
ing and delaying the creditors of McClintock & Wilson in

the collection of their claims, your verdict will be for plaint-iff. It is not enough to show that the sale to Lucas did prevent other creditors of McClintock & Wilson from collecting their claim. In addition thereto it must be shown that plaintiff made such purchase for the purpose of so hindering and delaying creditors.

"9th. The law presumes that all persons transact their business honestly and in good faith until the contrary appears from a preponderance of the evidence, and the burden of proving fraud is always on the party alleging it. All persons are presumed to be innocent of intentional wrong until they are proven to be guilty, and when an act can as well be attributed to an honest intent and purpose as to a corrupt or unlawful one, then the jury are bound to attribute the act to an honest intent and to a lawful purpose.

"10th. The jury are instructed that when a person purchases goods with the knowledge that his vendor intends by the sale to defraud his creditors, or to hinder and delay them in the collection of their debts, such purchases will not be affected if he takes the goods in good faith in payment of an honest debt. A creditor violates no rule of law when he takes payment of his debt, though he knows that other creditors are thereby deprived of all means of obtaining satisfaction of their own equally meritorious claims.

"11th. The jury is instructed that the possession of personal property is *prima facie* evidence of ownership, if there are no circumstances accompanying the possession to rebut the presumption of ownership; and if the jury believes from the evidence that plaintiff had been in possession of the property in question for some days prior to, and up to the time it was taken from him by the sheriff, and under circumstances indicating ownership in him, then it is incumbent upon the defendant to show by a preponderance of testimony that the title was not in the plaintiff;

and unless he has done so, they should find for the plaintiff as to the ownership of the property.

"12th. You are instructed that if plaintiff purchased the property in controversy in good faith, and without any intent to defraud the creditors of McClintock & Wilson, then the fact that such purchase was made for less than the goods were worth in the market, if such be the fact, will not invalidate the sale, unless the consideration paid was grossly inadequate.

"13th. You are instructed that inadequacy of consideration is not a badge of fraud unless it is great, and the fact that a purchaser buys cheap, or for somewhat less than the market value, will not be sufficient to set aside said purchase, and if you find that Lucas bought said property cheap, or at a low price, that will not invalidate the transfer.

"14th. You are instructed that a conveyance of property by an insolvent debtor with an intent on his part to defraud creditors, made to any person for a valuable consideration, will be valid, unless the purchaser know of such an intent, and the circumstances are such that the payment of the consideration, or the transfer of the property, will enable the debtor to place his property beyond the reach of his creditors, or aid him in so doing, and that no matter what the intention of McClintock & Wilson may have been when the transfer was made, nor how they may have regarded it, if Lucas purchased the stock of goods in good faith, and for a valuable consideration, the conveyance is valid.

"15th. If you believe that any witness, while on the stand testifying before you, has willfully and knowingly testified falsely as to any material matter in issue in this case, you will be justified in disregarding and disbelieving all of the testimony of such witness, except so far as his testimony may be corroborated and substantiated by the testimony of other credible witnesses.

And the defendant below here asked the court to instruct the jury as to the law of the case, as follows:

"1st.  The court instructs the jury that fraud in the sale or conveyance of property is a fact that may be proved by showing the existence of other facts and circumstances surrounding, or connected with, the transaction, tending to show a fraudulent intent on the part of the parties to such sale or conveyance, or tending to show a purpose not consistent with an honest intent, and if the jury believe from the evidence in this case, as shown by the proof of facts and circumstances, that McClintock & Wilson intended by the sale of the property in controversy in this action, to hinder, delay, and defraud their creditors, and that plaintiff in purchasing the same participated in, or knew, or had notice of such fraudulent intent on the part of McClintock & Wilson before or at the time he made such purchase, then in such case the defendant is entitled to recover in this action.

"2d.  The court instructs the jury that if they believe McClintock & Wilson sold and conveyed the property in controversy to plaintiff, and they further believe from the evidence that McClintock & Wilson intended by such sale to hinder, delay, and defraud their creditors, and that before or at the time plaintiff made such purchase he had knowledge or notice of such fraudulent purpose of McClintock & Wilson, or before or at the time of such purchase the plaintiff had knowledge of such facts and circumstances as would have aroused the suspicion of, and put a reasonably prudent man upon inquiry, which inquiry, if pursued, would have led to knowledge or notice of such fraudulent intent on the part of McClintock & Wilson, then, in such case, plaintiff cannot recover in this action, and they will find for the defendant."

.  Which said two last above instructions the court gave to the jury as requested by the defendant below.

And the said defendant below further moved and requested the court to instruct the jury as follows:

" 3d.   The court instructs the jury that if they believe, from the evidence, that McClintock & Wilson sold and conveyed to plaintiff the property in controversy, and that in said sale it was the intent of McClintock & Wilson to hinder, delay, and defraud their creditors, and that plaintiff participated in such fraudulent purpose, or had knowledge or notice of the same before or at the time of the purchase, then in that case plaintiff takes no title to property so purchased as against the creditors of McClintock & Wilson though the jury may believe from the evidence that he paid full value therefor, and in such case the jury will find for the defendant."

But the court refused to give said instruction last above to the jury.

And the court of its own motion modified said instruction last above by the addition thereto, at the bottom thereof, of the following words :

" Unless you further find that plaintiff took the stock of goods in payment of an honest, *bona fide* debt, due him from McClintock & Wilson, without any intention on his part to defraud their creditors."

And after so modifying said instruction, the court gave the same to the jury in such modified form.

And the defendant below further requested the court to instruct the jury as to the law of the case as follows :

" 4th.   The court instructs the jury that if they believe from the evidence that McClintock & Wilson were insolvent, or were largely indebted, and that they were being pressed by their creditors for payment of their respective claims, and that while so indebted they made sale of all their property to plaintiff, and that such sale had the effect to defeat the creditors of McClintock & Wilson in the collection of their debts, and that such indebtedness of McClintock & Wilson was known to plaintiff before purchasing said property, then these facts, if shown in the evidence, are circumstances to be considered by the jury, showing a fraudulent intent in the sale of such property.

"5th. The court instructs the jury that fraud in the sale and conveyance of property is often difficult to detect and hard to prove, and for this reason the law permits fraudulent purpose and intent to be shown by proof of the existence of other facts and circumstances surrounding or connected with the fraudulent act, that tend to show a dishonest purpose; and in this case, if the jury believe from the evidence that plaintiff was not a merchant or dealer in the character of goods in controversy; that he was a resident of Wisconsin; that he came to Knox county, Nebraska, upon request of McClintock & Wilson, or either of them; that shortly after his arrival he purchased all the property of McClintock and Wilson, at and for a price less than its real value; that prior to such purchase no invoice of said property had been taken whereby the quantity and value could be ascertained; that at the time of such purchase McClintock & Wilson were insolvent or largely indebted; that such sale would have the effect to hinder and delay, if not defeat the creditors of McClintock & Wilson in the collection of their debts; that plaintiff knew of such indebtedness of McClintock & Wilson, or could have known it by ordinary inquiry; that plaintiff disposed of and sold all the property shortly after obtaining possession by virtue of the writ of replevin issued in this action; then these and similar facts and circumstances, if shown in evidence to the jury, are to be considered by them in determining whether the sale of the property in controversy by McClintock & Wilson to plaintiff was fraudulent or not.

"6th. The court instructs the jury that the burden of proving fraud in this case rests upon the defendant. But if the jury believe from the evidence in this case that McClintock & Wilson in the sale of the property in controversy to plaintiff intended thereby to hinder, delay, or defraud their creditors, and they also believe from the evidence that there were facts and circumstances surround-

Bollman v. Lucas.

ing and connected with the transaction of said sale, known to plaintiff, which would put an ordinarily prudent man upon inquiry, which inquiry, if pursued, would give plaintiff notice of the purpose of McClintock & Wilson in making the sale; then in that case the burden of proof is upon the plaintiff to show by evidence that he purchased said property in good faith, for valuable consideration, without notice of any fraudulent intent on the part of McClintock & Wilson.

"7th. The court instructs the jury that if they should find the issues for the defendant in this case then the measure of damages which the defendant will be entitled to recover is the aggregate of the judgments and costs in the case of Henry Fuhrman against G. H. McClintock and G. L. Wilson, and the Friend Brothers Clothing Co., against G. H. McClintock and G. L. Wilson, and Joseph Rice and others against G. H. McClintock and G. L. Wilson, and of the several sums mentioned in the several writs of attachments of Jandt & Tompkins against McClintock & Wilson, and of Straw, Ellsworth & Co. against McClintock & Wilson, and the sums mentioned therein as costs, and not, however, to exceed the value of the goods in controversy."

Which said instructions, numbered 4, 5, 6, and 7 last above, the court gave to the jury as requested by the defendant below.

Other instructions were asked for by the said defendant below and refused by the court, but it is not deemed necessary to set them out at length. Neither is it my purpose to review at length the instructions given or refused. Throughout the series of instructions given at the request of the plaintiff, the jury are told, more or less explicitly, that while the sale of the goods by McClintock & Wilson may have been made with whatever fraudulent intent to hinder, delay, and defraud their creditors, although this fraudulent intent on their part may have been known

to the plaintiff, yet if the purchase on his part was made *bona fide* and solely for the purpose of collecting a debt due him from them, then the sale is good and unaffected by the fraudulent intent of McClintock & Wilson. This is not the law as understood by this court.

In the case of *Temple v. Smith*, 13 Neb., 513, cited by counsel for plaintiff in error, the court, in the opinion of the present chief justice, say: "But where a purchaser has notice of the fraudulent intent of the person from whom he purchases, or has notice of such facts as would put a man of ordinary · prudence upon inquiry, which would have led to a knowledge of the fraudulent purpose of the person selling the goods, he is not a *bona fide* purchaser." Citing *Zuver v. Lyons*, 40 Iowa, 510. *Jones v. Hetherington*, 45 Id., 681. *Bradford v. Beyer*, 17 Oh. S., 388. *Brown v. Cutler*, 8 Oh., 142.

It would seem that the provisions of the statute applicable to this subject are too plain to admit of argument.

Section 17, chapter 32, Comp. Stats., 1877, provides that, "Every conveyance or assignment, in writing or otherwise, of any estate or interest in lands or in goods or things in action, or of any rents or profits issuing therefrom, and every charge upon lands, goods, or things in action, or upon the rents and profits thereof, made with the intent to hinder, delay, or defraud creditors or persons of their lawful rights, damages, forfeitures, debts, or demands, and every bond or other evidence of debt given, suit commenced, or decree or judgment suffered with the like intent, as against the person so hindered, delayed, or defrauded, shall be void."

Section 21 provides that, "The provisions of this chapter shall not be construed in any manner to affect or impair the title of a purchaser for a valuable consideration, unless it shall appear that such purchaser had previous notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor."

Were it not for section 21, which to that extent modifies

the effect of section 17, a sale made with intent on the part of the vendor to defraud his creditors would be absolutely void, notwithstanding the good faith of the vendee; and so, in order to make the benefits of section 21 available to him, he must have been ignorant, both actually and permissibly, of the fraudulent intent and purpose of his vendor.

The error in the giving of the instructions above referred to on the part of the plaintiff was not cured by the giving of instructions 4, 5, and 6, as asked for by the defendant, where the law is probably correctly stated. For the only effect of said instructions, together with those before given, was to present two inconsistent and conflicting rules of law to the jury without any rule or guide to enable them to distinguish the right from the wrong one. Instruction No. 3, asked for by the defendant, fairly presents the law of the case and should have been given without modification. As modified by the court and given, it was erroneous. While the main question involved in the case was one of fact for the jury, yet to give their finding force and effect upon the rights of the parties they must have been properly instructed in the law of the case. Such not having been done, the verdict cannot be sustained.

The judgment of the district court is reversed and the cause remanded for further proceedings in accordance with law.

REVERSED AND REMANDED.

THE other judges concur.