MOORE v. CITY OF DALLAS. (No. 7840.)

(Court of Civil Appeals of Texas. Dallas. Jan. 19, 1918. Rehearing Denied Feb. 16, 1918.)

1. JURY ☞89—DISQUALIFICATIONS OF JURORS—TAXPAYERS.

In an action against a city, the fact that veniremen are taxpayers of the city does not disqualify them; their interest being entirely too remote.

2. NAVIGABLE WATERS ☞39(4)—TITLE TO—RIPARIAN PROPRIETORS.

The channel of a natural stream more than 30 feet wide and navigable is owned by the state, and a riparian proprietor does not own to the center of the channel, and so cannot complain that a municipality under authority of the state constructed a dam impounding the waters of the stream.

3. TRIAL ☞350(3) — WATERS AND WATER COURSES ☞178(2) — INJURIES TO LANDS — MEASURE.

Where a municipality erected a dam impounding the waters of a stream, and plaintiff asserted that his lands bounded by the stream were damaged, the measure of his damage is the difference between the value of his land just before and just after the injury, and the refusal of special issues calling for findings as to whether the dam caused any damage to plaintiff's lands during certain floods was not error; there being no testimony with reference to any special or particular damage resulting therefrom.

4. WATERS AND WATER COURSES ☞179(3)—EVIDENCE—ADMISSIBILITY.

In an action for damages to plaintiff's land resulting from the erection of a dam, the admission of evidence as to the flooding of other lands on the same stream in time of high water was improper, where it was not shown that those lands were subject to the same conditions as plaintiff's.

5. WATERS AND WATER COURSES ☞179(3)—EVIDENCE—ADMISSIBILITY.

In an action by a riparian proprietor against a city for damages from the construction of a dam to impound the waters of a stream, to supply the inhabitants of the city, evidence as to the great necessity of that measure, and that prior to the construction of the dam drinking water had to be hauled, and there was insufficient water for flushing purposes, was improper.

Appeal from District Court, Dallas County; W. F. Whitehurst, Judge.

Action by Charles C. Moore against the City of Dallas. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

Marshall Thomas, of Dallas, for appellant. L. R. Callaway, Lee Richardson, and Royall R. Watkins, all of Dallas, for appellee.

TALBOT, J. Appellant is the owner of a farm situated in Dallas county, Tex., just west of the Elm fork of the Trinity river, the center of the channel of Denton creek, which empties into said river, being, according to his claim and contention, the north line of his land. During the year 1912 the city of Dallas, for the purpose of enlarging its water supply, erected a concrete dam across the channel of the Elm fork of the Trinity river on the Western Berry survey, about 2,000 yards below the mouth of Denton creek. This dam, so constructed, had the capacity of storing between 350,000,000 and 400,000,000 gallons of water in the channels of Elm fork of the Trinity river and of Denton creek, and was completed and the water stored therein in the latter part of December, 1912. This suit was filed by appellant against the city to recover damages to his farm by reason of the construction and maintenance of the dam and the storing of the water in the channels of said streams, in which he alleged that the condition created by the defendant city caused the banks of said streams to overflow during each successive rise of said streams, causing his property to overflow and wash, and imposing upon his property an additional burden of

overflow water; that his farm was of a reasonable value of $100 per acre; and that by reason of the condition created by the city, the value of his property had been depreciated until it was not worth exceeding $50 per acre. It was alleged by him that the city of Dallas had appropriated so much of his property as was situated in the channel of Denton creek for its purposes, and had taken his property and damaged the same without having made compensation therefor or secured the same in contravention of the organic law of the state. Appellant pleaded his cause of action in two counts. In the first count he sought to recover for permanent damages to his land, and the value of the property appropriated, and also sought an injunction against the city enjoining and prohibiting it from maintaining said dam in said stream until it had compensated him in the manner provided by law in the taking and damaging of his property. In the second count appellant asked a recovery for damages caused to his property by reason of the overflows occurring in said streams on the 8th of June, 1915, on the 28th day of January, 1916, and the 3d day of April, 1916. The city of Dallas answered by general and special demurrers, general denial, and specially that it had appropriated the waters in said stream, and had in accordance with the act of the Legislature of the state of Texas, known as chapter 171 of the General Laws of the State of Texas, enacted by the Thirty-Third Legislature (Vernon's Sayles' Ann. Civ. St. 1914, art. 4991 et seq.), duly filed in the office of the board of water engineers of the state a certified copy of the sworn statement making such appropriation, and had also filed with the clerk of the county court of Dallas county copy of such certified copy of the said appropriation.

The case was tried before a jury on June 27, 1916, and submitted by the court on the following special issues:

First. What was the reasonable cash market value of plaintiff's property immediately before the building of Carrollton dam?

Second. What was the reasonable cash market value of plaintiff's property immediately after the Carrollton dam was completed?

Third. Do you find and believe from the evidence that plaintiff's land was susceptible to overflow to the same extent prior to the construction of the Carrollton dam as after the construction of said dam?

To these questions the jury answered: First, $20 per acre. Second, $40 per acre. Third, Yes.

Upon return of the verdict the court entered a judgment in favor of the defendant, and the plaintiff appealed.

[1] The first assignment of error asserts that the court erred in refusing to sustain the plaintiff's challenge for cause of the jurors who were taxpayers in the city of Dallas, and in requiring him to try his case before such jurors. The proposition is that:

"A resident citizen of the city of Dallas and a taxpayer in said city is disqualified as a juror in a suit of this character against said city."

The challenge for cause was, because disqualified under the statute and because interested in the matter in controversy. The assignment will be overruled. The question presented has been definitely decided, we think, against the appellant's contention in the following cases: Peacock v. City of Dallas, 89 Tex. 438, 35 S. W. 8; Railway Co. v. Bishop, 34 S. W. 323; City of Marshall v. McAllister, 18 Tex. Civ. App. 159, 43 S. W. 1043; Martin v. Somervell County, 21 Tex. Civ. App. 308, 52 S. W. 556; City of Jackson v. Pool, 91 Tenn. 448, 19 S. W. 324. It is not believed that the difference in the wording of the statute relating to the disqualification of judges and that relating to the disqualification of jurors materially affects the question. The decisions above referred to rest upon the view that the interest of a taxpayer of a city is too indirect, remote, and contingent to render him disqualified to serve as a juror in a suit in which the city is a party. If the interest in either case, even though indirect, were immediate, real, and substantial, it would doubtless be sufficient to disqualify, but our decisions, as we understand them, are to the effect that resident taxpayers of a municipal corporation have no such interest in the subject-matter of a suit for damages against it.

[2] By his second assignment of error the appellant contends that the court erred in entering the judgment asked for by defendant, because he says the undisputed evidence showed that the channel of Denton creek on the north boundary line of his property had been appropriated by the defendant; that the same was the property of the plaintiff, and that he had not been compensated therefor as required by law; that until such compensation had been made the defendant had no legal right to maintain the Carrollton dam, and therefore plaintiff was entitled to a judgment enjoining defendant from maintaining the same and requiring its removal. This contention is based upon the theory that plaintiff's north boundary line and ownership extended to the channel or middle of Denton creek; that the dam in question caused the water in Denton creek to be impounded and stand therein at a great depth, all the time depriving him of the use of his property. The proposition is that the taking and appropriation by the appellee of the portion of the channel of Denton creek, the property of appellant, without compensation first being made therefor, was a taking of his property in contravention of the Constitution of this state, and that injunction to prevent such appropriation or use is the proper remedy, and such relief should have been granted. A complete answer to this con-

tention, we think, is made by appellee, namely:

"Denton creek being a natural stream, and navigable water course, the channel thereof belongs to the state of Texas, and no part of the same was owned by appellant, and the trial court therefore did not err in refusing to render judgment enjoining and prohibiting appellee from maintaining its dam across Elm fork of Trinity river, and requiring the removal of said dam because the water was thereby backed up in the channel of said creek. Appellee owns and operates its system of waterworks, and by authority of title 73 of the statutes of this state appropriated certain waters in the channel of Elm fork of Trinity river by means of the construction of what is called Carrollton dam across said stream for that purpose. This stream again forks at a distance of about 2,000 yards above said dam, the western prong thereof being designated as Denton creek. The testimony is sufficient to show circumstantially that Denton creek is more than 30 feet in width, and therefore a navigable stream, the channel of which is owned by the state."

[3] There was no error in refusing to submit certain special issues requested by the appellant, the refusal of which is complained of in the fourth and fifth assignments of error, calling for findings of the jury as to whether or not the maintenance of the Carrollton dam caused any damage to plaintiff's land in the floods of June 8, 1915, January 26, 1916, and April 3, 1916, and, if so, a finding of the reasonable market value per acre of plaintiff's land in the condition it was in immediately before and immediately after said floods. Under the facts the true measure of plaintiff's damage was the difference between the value of plaintiff's land just before and just after the injury, if any, and if any complaint whatever could be made to the form in which the issue was submitted, which is not done, it is that the jury possibly may have been misled or confused in being directed to find the market value of plaintiff's land immediately before and after the construction of the dam, instead of immediately before and immediately after the injury, if any, to said land. The testimony as to these values was conflicting, and was also conflicting, as we understand it, with respect to the frequency and extent of overflows and washing of the soil on the land before and after the construction of the dam and the alleged injury. We have discovered no testimony in the record with reference to any special or peculiar damage resulting to the land by reason of the three floods mentioned, or showing the comparative market value of the land per acre just prior to and just after said respective floods. As we view the testimony, and as argued by the appellee, it does not treat the several alleged dates of damage separately, but has reference to it generally "as a permanent damage consequent upon and continuing since the construction and maintenance of the dam. No witness, so far as we have discovered, singled out and specified in his testimony any peculiar or special damage done by any one of the floods designated in the special issues requested by appellant. Nor have we found any evidence showing how many acres of land were damaged by each or any one of said floods." Of the many cases illustrating the rule as to the measure of damages in this character of case, we cite Railway Co. v. Graham, 12 Tex. Civ. App. 54, 33 S. W. 577; Railway Co. v. Horkan, 45 S. W. 391; Railway Co. v. Barry, 98 Tex. 248, 83 S. W. 5; Railway Co. v. Brown, 38 Tex. Civ. App. 610, 86 S. W. 659; Railway Co. v. Clayton, 54 Tex. Civ. App. 512, 118 S. W. 248.

[4] There are several assignments of error complaining of the admission of the testimony of certain witnesses to the effect that certain lands located along Elm fork of the Trinity river and some distance below plaintiff's land and the Carrollton dam had suffered from overflows of that stream during heavy rainfalls for many years prior to the construction of said dam practically the same as they had suffered therefrom since its construction. The contention is that "before evidence as to the effect of floods in the same stream at a point different from that involved in the suit is admissible, the conditions and surroundings must be shown to be substantially similar in all respects to the conditions and surroundings of the stream at the point involved in the suit," and that this was not done. The proposition embraced in this contention is sound, and we think the testimony was improperly admitted. The necessary predicate for its introduction was not laid. It was not shown that the land spoken of by the witnesses and plaintiff's land were so similarly situated that the one would be as subject to overflow and damage as a consequence of the dam in question as the other. In Railway Co. v. Kiersey, 101 Tex. 513, 109 S. W. 862, the issue was whether the construction of a railway across a bayou had caused the plaintiff's lands thereon to become boggy and not to dry out after overflow, and it was held that evidence that no such condition was observed on the lands of another proprietor on the bayou some miles above was inadmissible. In passing upon the question the Supreme Court quotes with approval from the opinion of that court in Green v. Railway Co., 79 Tex. 604, 15 S. W. 685, the following:

"Before such a test can be properly applied the condition of the two places with regard to the production of a crop should be proved in every material particular. Such evidence can scarcely ever be of a very satisfactory character."

See, also, Railway Co. v. Locker, 78 Tex. 279, 14 S. W. 611. It will not do to say that this testimony was harmless. It bore upon a vital issue in the case, and was introduced by the appellee evidently for the purpose of having it considered by the jury as proof of its claim that appellant's property had not

been injured or damaged as a result of the construction of the Carrollton dam. It was clearly calculated to and probably did very greatly influence the jury in rendering the verdict they did.

[5] We are further of the opinion that the witness R. R. Nelms should not have been allowed to detail to the jury the efforts made and methods adopted by appellee to supply its inhabitants with water at or about the time the construction of the Carrollton dam was begun. The statement of this witness to the effect that the appellee at that time could not supply the people with water for the purpose of flushing the toilets, and had 74 wagons running over the city to supply drinking water, putting tubs in front of the homes of different ones, could not fairly be used as evidence tending to establish any issue in the case, and was calculated to influence the jury to the prejudice of the appellant. Appellee says the testimony of this witness was relevant and material to show that the construction of the Carrollton dam was necessary, but it hardly can be said that the appellee's lack of an adequate supply and the necessity for increasing it were issuable facts under appellant's pleadings or the evidence in the case. The admission of this testimony probably was not of sufficient damage to alone justify a reversal of the case.

Appellant contends that the findings of the jury that the market value of appellant's land immediately before the construction of the Carrollton dam was $20 per acre, and that it was $40 per acre immediately thereafter, are contrary to the undisputed evidence. There may be some foundation for the contention that these findings are against the preponderance of the evidence, but we are not prepared to hold that they are contrary to the undisputed evidence.

For the reason indicated, we believe the judgment should be reversed, and the cause remanded for a new trial; and it is so ordered.

Reversed and remanded.