**CITY OF HAWKINS, Appellant,**

v.

**E. B. GERMANY AND SONS et al., Appellees.**

**No. 312.**

Court of Civil Appeals of Texas.

Tyler.

Feb. 15, 1968.

Rehearing Denied March 14, 1968.

Charles H. Clark, Tyler, for appellant.

Thompson, Knight, Simmons & Bullion, Pinkney Grissom, George C. Chapman, Burford, Ryburn & Ford, Dallas, for appellees.

MOORE, Justice.

This is a suit for damages instituted by appellant, City of Hawkins, against appellees, E. B. Germany And Sons, G. H. Vaughn, Jr. and Jack C. Vaughn.

As grounds for its cause of action, appellant alleged that prior to 1961, the city owned and operated two water wells within the corporate limits of the City of Hawkins,

which wells served as the municipal water supply of the city and that appellees were the owners and operators of a certain oil and gas well situated in the City Limits of the City of Hawkins, known as the Minshew No. 1; that sometime during the year of 1961, gas and other hydrocarbons appeared in the city's two water wells, causing a pollution of the water, rendering same unfit for human consumption, and causing the city to have to resort to other sources for its water supply at great expense and damage to the city. Appellant further alleged that after the pollution occurred, it caused tests to be made on all the oil wells in the immediate areas surrounding the water wells, including the Minshew No. 1, to determine which wells, if any, were leaking and causing the pollution; that as a result of such tests, it was found that the Minshew No. 1 was leaking and appellees were requested to take immediate steps to correct same; that appellees delayed making repairs to correct the leak for some fifteen months, and as a result, the city was deprived of the use of its water wells for a period of approximately two and one-half years, causing the city to suffer considerable damage; that such damages were proximately caused by the negligence of appellees in (1) failing to test their well for leaks; and (2) permitting gas and other hydrocarbons to escape from the Minshew No. 1 and pollute the city's water wells. Appellees denied generally the allegations in appellant's petition and ffirmatively alleged that appellant's damages were not caused by any negligence on their part, but such damages, if any, were the result of acts and omissions of others, and in the alternative alleged that the damages were the result of an unavoidable accident.

Trial was before a jury. In response to the special issues as numbered in the court's charge, the jury made the following material findings: (1) that gas and other hydrocarbons escaped from the Minshew No. 1 and (2) polluted appellant's water wells; but (3) that appellees were not negligent in permitting the gas and other hydrocarbons

to escape from their oil wells; (5) that appellees did not fail to test their oil well for leaks; and (8) that pollution of the city's water wells was the result of an unavoidable accident. Based upon the verdict, the trial court rendered judgment for appellees.

After its motion for new trial was overruled, appellant perfected this appeal and has attacked the judgment by five points of error. Since none of appellant's points attack the judgment as being unsupported by the evidence, a detailed discussion of the facts will not be necessary.

Under the first point, appellant contends that the trial court erred in sustaining appellees' motion to disqualify three members of the jury panel solely on the ground that they were resident, tax-paying citizens of the City of Hawkins. In connection with this point, it was stipulated that the population of the City of Hawkins was somewhere between eight hundred and one thousand, and that the city had between three hundred fifty and four hundred water meters. According to the pleadings, the city contended that the pollution affected the water supply of all residents of the city.

The record shows that at the conclusion of the voir dire examination, there were thirty jurors on the panel. Thereafter, appellees filed a motion to disqualify three members of the panel for cause. In connection with their motion, appellees alleged that in view of the evidence showing that each of the jurors in question was a resident, tax-paying citizen of the city, appellees believed that the financial interest of the three jurors was such that it could not help but weigh on their minds during the trial and thereby result in prejudice to the appellees. Over the objection of appellant, the court granted the motion and excused all three jurors. In this connection, however, the record shows that only two of said jurors, Moore and Kirkpatrick, were within the first 24 on the list and the third juror, Van Horn, was No. 27 on the list. Since juror Van Horn could not have been reached, the action of

the court in excusing this juror would not be material under this point.

Article 2134, Vernon's Ann.Tex. Statutes, provides:

"The following persons shall be disqualified to serve as jurors in any particular case:

"*    *    *    *    *    *

"2. Any person interested, directly or indirectly, in the subject matter of the suit.

"*    *    *    *    *    *

"4. Any person who has a bias or prejudice in favor of or against either of the parties."

In addition to such statutory disqualifications, the trial court has discretion to determine whether the juror is disqualified for some other cause not mentioned in the statute. Bennett v. Jackson, (Tex.Civ.App.) 172 S.W.2d 395; McDonald, Texas Civil Practice, Vol. 3, Sec. 11.11, p. 984.

The general rule is that the interest of a resident, tax-paying citizen of a city is too remote and contingent to render him disqualified to serve as a juror in a suit in which the city is a party. If, however, the interest in either case, even though indirect, was immediate, real and substantial, it would doubtless be sufficient to disqualify. Moore v. City of Dallas, (Tex.Civ.App.) 200 S.W. 870; City of Marshall v. McAllister, 18 Tex.Civ.App. 159, 43 S.W. 1043.

The ultimate question of whether a prospective juror is in fact disqualified by reason of interest, bias or prejudice or for some other cause, must depend upon the evidence. The record before us does not contain any of the testimony produced before the court upon voir dire examination, nor does the record show that appellant preserved the error complained of by way of a bill of exception. Without the testimony of the jurors on voir dire examination or a bill of exception, we cannot say that the trial court erred in impliedly finding that the jurors in question were disqualified. The court had an opportunity to see, hear and size up the jurors and was in a much better position than we to determine their qualification. McBroom v. Brown, (Tex. Civ.App.) 277 S.W.2d 310. We cannot assume or surmise that there was no evidence to support the trial court's finding. On the contrary, in the absence of any testimony produced on voir dire examination or a bill of exception, it must be conclusively presumed that there was sufficient evidence to support the trial court's finding. Lane v. Fair Stores, 150 Tex. 566, 243 S.W.2d 683. Such finding is binding on this court and may not be disturbed on appeal. Bashrum v. Vinson, (Tex.Civ.App.) 330 S.W.2d 538; Woolam v. Central Power & Light Co., (Tex.Civ.App.) 211 S.W.2d 792.

While we believe appellant's failure to properly bring forward in proper manner the error complained of is determinative of the point, there is yet another reason why the point cannot be sustained. Appellant does not allege or attempt to demonstrate how any harm resulted by reason of the adverse ruling. It has long been the established rule in this state that even though the challenge for cause was improperly sustained, no reversible error is presented unless appellant can show he was denied a trial by a fair and impartial jury. Rule 434, Texas Rules of Civil Procedure; Galveston, H. & S. A. Ry. Co. v. Thornsberry, Tex., 17 S.W. 521; Woolam v. Central Power & Light Co., supra, citing cases; also see Hammon v. Texas & New Orleans Railroad Company, (Tex.Civ.App.) 382 S. W.2d 155. The record brought forward by appellant fails to show appellant objected to any juror on the panel. Since it was not shown that the city was forced to try the cause before an objectionable juror, it must be presumed that the city was afforded a fair and impartial jury. Consequently, no harm could have resulted to appellant by reason of the action of the court in excusing the two jurors.

In the second point of error, the appellant asserts that the court erred in admitting appellees' Exhibits Nos. 212–217. In related points of error three, four and five, appellant asserts that the court erred in permitting appellees' witness, Morris Brown, over its objections, to testify with reference to the aforesaid Exhibits and in failing to strike his testimony. The objection to the Exhibits was on the ground that the same constituted results of tests and experiments conducted on other oil wells which bore no similarity to the tests to the Minshew No. 1, and were therefore not admissible because same were hearsay and were also immaterial. Appellant's objection to the testimony of Morris Brown was on the ground that his testimony with reference to Exhibits 212–217 was hearsay and irrelevant and immaterial to any issue in the case.

In order to place these points in their proper perspective, a brief statement of the evidence offered by the city will be necessary. The evidence shows that when the city became aware of the pollution of its water wells, it called upon the Texas Railroad Commission to conduct certain tests of the oil and gas wells located in the vicinity of the city's water wells in order to determine which, if any, of the oil wells were leaking. The evidence shows that in the immediate vicinity of the city's water wells, there were approximately 100 oil and gas wells. The evidence further shows that either the railroad commission or the owners of the various wells within the city tested practically all of the wells for leaks. The method used for testing for leaks was a method known as "temperature survey." This test was conducted by lowering a device into the well known as a "bomb" or a "Humble bomb." The "bomb" device contained a thermometer and a recording device so that the temperature of the well could be recorded as the bomb descended into the depths of the well. After all the tests had been completed, the railroad commission's report showed that the only well found to be leaking was the Minshew No. 1.

The evidence further showed that the railroad commission forwarded its report to the appellees advising them that their well was leaking. During the trial, the city offered in evidence plaintiff's Exhibit No. 191, which contained sub-surface depth-temperature charts prepared by the Railroad Commission upon each well in the city. These charts were in the form of gradients and showed the results of the temperature tests conducted on all wells, including the Minshew No. 1. According to the officials of the Texas Railroad Commission, these charts showed that the only well leaking in the area was the Minshew No. 1. They admitted, however, that the tests were somewhat inconclusive.

Appellees maintained throughout the trial that the tests performed by the Railroad Commission did not show that their well was leaking. In an effort to rebut the Railroad Commission's report, appellees offered the testimony of Morris Brown, a qualified expert in the field of petroleum geology and engineering. Brown testified that in his opinion the tests performed by the Railroad Commission failed to show that the Minshew No. 1 was leaking, or at least, the tests were inconclusive in that they failed to show (1) the condition of the well at the time of the test; (2) how long the well had been shut in at the time of the test; and (3) how long the "bomb" was stopped at specific depths. He testified that prior to the time of trial, he had obtained from various sources, certain temperature charts or gradients on five other oil wells which were found to be leaking, none of which were in the City of Hawkins. He testified that after studying the results of the temperature surveys on those five wells, he was of the opinion that the circumstances under which temperature tests were conducted were important and could vary the results of the tests. He took the position that since the Railroad Commission reports failed to show the circumstances under which their tests were conducted, such tests were inconclusive and of no value. In connection with his testimony,

he referred to five charts showing the result of the tests conducted on the other wells and testified that each showed the temperature tests to vary according to the circumstances under which they were taken. These charts, over appellant's objection, were introduced in evidence as defendants' Exhibits 212–217. The evidence shows that two of the Exhibits in question were taken from the files of his employer and the other three were taken from trade journals. Brown did not participate in making any of the tests. Nowhere in his testimony does he state that he has any personal knowledge of any of the facts shown on the charts, nor did he undertake to testify as to the accuracy of the same. He testified that these Exhibits demonstrated and supported his contention that the temperature of a well tends to vary according to the various circumstances, even though none of the tests were conducted by the use of a "bomb" device. As we view the record, these Exhibits were introduced for the primary purpose of supporting Brown's conclusion that all temperature tests tend to vary according to the circumstances under which they are taken and to thereby bolster his opinion that the Railroad Commission tests were of no value because they did not show the circumstances under which the tests were conducted.

■ Ordinarily, a party is entitled to support the opinion testimony of his expert witness by proof of facts which tend to show its accuracy. 32 C.J.S. Evidence § 570, p. 659. However, an expert witness is not permitted to narrate facts and circumstances of a special transaction, outside the case on trial, and thereafter demonstrate the result thereof by graphs or exhibits, for the purpose of enabling the jury to compare the facts and results of such transactions with those of the case on trial, the object being to impress the jury with the soundness of the witness's opinion or judgment; 32 C.J.S., supra, citing Bollman v. Lucas, 22 Neb. 796, 36 N.W. 465, especially where the witness does not vouch for the accuracy of such outside tests or transactions.

■ For this reason, we believe the Exhibits offered by appellees should not have been admitted. However, we fail to see how the error, if any, could have been harmful and caused the rendition of an improper judgment. The record, in this respect, conclusively shows that all of Brown's testimony was offered for the purpose of rebutting the city's evidence showing that the Minshew No. 1 was leaking. The main thrust of his testimony was that the well was not leaking and that the tests conducted by the Railroad Commission were inconclusive and consequently of no value. But the verdict of the jury shows that the jury rejected his testimony by finding that the well was leaking. Since the jury apparently placed no credence in his testimony and answered the issue in appellant's favor, neither his testimony nor the Exhibits could have resulted in any harm to appellant. Nor can we perceive how such testimony could have affected the jury in answering any of the other issues adversely to appellant. While the jury found the oil well was leaking, the jury also found that the city had failed to discharge its burden of proof in establishing negligence. The jury further found that the city failed to discharge its burden of proving that the pollution was not the result of an unavoidable accident. Appellant does not undertake to demonstrate how the error, if any, in admitting this evidence could have influenced the jury in finding adversely to the city upon the liability issues and we fail to see how it could have had such an effect.

■ The great weight of authority in cases similar to this in Texas requires that appellant not only show that the admission of such objectionable evidence was error, but that such error constituted a denial of the rights of the complaining party as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. Rule 434, Texas

Rules of Civil Procedure; Condra Funeral Home v. Rollin, 158 Tex. 478, 314 S.W.2d 277; Calvert v. Beazley, (Tex.Civ.App.) 403 S.W.2d 905. After a review of the record as a whole, we do not believe the error, if any, was reasonably calculated to cause and probably did cause the rendition of an improper judgment.

The judgment of the trial court is affirmed.