**AFFIRM; and Opinion Filed April 28, 2017.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-01148-CV

### GREENWOOD MOTOR LINES, INC. D/B/A R+L CARRIERS AND STEVEN C. GASTON, Appellants

### V.

### BOBBIE BUSH, Appellee

**On Appeal from the 298th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-11-16041-M**

## MEMORANDUM OPINION

Before Justices Bridges, Stoddart, and O'Neill[1]
Opinion by Justice Bridges

On the Court's own motion, we withdraw our opinion issued December 30, 2016 and

vacate our judgment of that date. The following is now the opinion of the Court.

Greenwood appeals the trial court's judgment, following a jury verdict, in favor of

Bobbie Bush. In five issues, Greenwood argues the evidence is legally and factually insufficient

to support the jury's findings and the trial court erred by (1) incorrectly handling spoliation

allegations, (2) admitting certain expert testimony, (3) admitting evidence of Greenwood's

preventability assessments, and (4) allowing the jury to hear allegations of Greenwood's net

worth. In seven issues, Gaston argues the evidence is legally and factually insufficient to support

the jury's findings and the trial court erred by (1) striking certain jurors for cause, (2) admitting

---

[1] The Hon. Michael J. O'Neill, Justice, Assigned

certain expert testimony, (3) admitting a "summary" of Gaston's own testimony, (4) excluding certain evidence, (5) admitting evidence of Gaston's prior bad acts, and (6) allowing Bush's counsel to make certain improper and prejudicial arguments. We affirm the trial court's judgment.

On December 5, 2011 at approximately 9:30 p.m., Bush was driving east on Interstate 20 near Weatherford when a tractor-trailer driven by Gaston struck Bush from behind. Gaston's vehicle flipped over multiple times, causing her physical and neurological injuries. On December 22, 2011, Bush filed a lawsuit against Gaston and his employer, Greenwood, alleging claims of negligence, negligence per se, and gross negligence. The lawsuit progressed, and, on May 15, 2013, Greenwood filed its original answer in which it argued Bush's own negligence was "the sole proximate cause or a proximate cause and/or the sole producing cause or a producing cause of the accident." In addition, Greenwood argued the accident was an unavoidable accident or the result of a sudden emergency; Bush's claim for punitive damages was insufficiently pled; and Greenwood could not be held liable for punitive damages because its actions were in compliance with regulatory or statutory standards, its actions did not cause Bush harm, Bush's injury was caused by someone else, and Bush was the sole cause of her injury or her negligence contributed to her injury. In the alternative, Greenwood argued any award of punitive damages was subject to a statutory cap or was barred by the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

Following numerous hearings on motions for sanctions, motions to exclude expert witnesses, and motions to compel, among others, the case proceeded to trial in March 2014. Bush testified that, on December 5, 2011, she was driving her 1994 Chevrolet pickup truck with boxes of household goods in the bed with a tarp covering them. Bush's two dogs were in a "doggy car seat" attached with the seat belt in the seat next to her. Bush was in the process of

moving from Las Vegas to Mississippi. The boxes in the bed of the truck did not prevent Bush from seeing out of the rear sliding window or "both side windows." Neither "the stuff in [the truck] bed" nor the tarp covered the truck's taillights. Bush drove through a construction zone in Weatherford and was traveling "a few" below the speed limit in the right lane. Bush was "rear-ended" and described the accident as "like lights, screech, boom and literally three seconds." Bush's truck "started spinning and started to flip." Bush did not remember anything "from the flip . . . to seeing lights" and found herself hanging upside down with her seat belt choking her. As Bush was trying to get out of the truck, she saw "lights and sirens and realized it was the police and ambulance people." Bush remembered a female police officer asking if Bush was okay and taking her to an ambulance. Both of Bush's dogs died in the accident. Initially, Bush refused to go to the hospital, but she developed blurred vision, migraines, nausea, and painful bruises, so she went to the emergency room several days later. Bush received ongoing treatment and required surgery to her neck that required "six pins and two plates." At the time of trial, Bush was "never pain free," and she required back surgery when her doctor cleared her following the neck surgery.

Gaston testified he rear-ended Bush, and the impact from the collision caused Bush's truck to "flip off the roadway." Gaston testified Bush's taillights were not covered by a tarp, and "nothing about the tarp caused this collision." Gaston thought Bush "could be on the side of the road dead," but he did not call 911 because he "could hear sirens already." Gaston "checked on" Bush and then used his cell phone to call Greenwood. Gaston "talked to a lady," Misty Urton, at Greenwood for about ten minutes and then "started receiving phone calls from somebody else" at Greenwood. Urton created a "preliminary even report" within ten minutes of the accident. The report stated "snow" under weather conditions, "wet" under road conditions, and 65 miles per hour under driver's speed. Gaston testified he "did not tell anybody" he was going 65 miles per

–3–

hour and denied there was snow on the road and denied that the road was wet. Bush's counsel asked Gaston if the mobile data terminal (MDT) on his truck could have told "somebody" at Greenwood his speed, and Gaston answered, "I assume." Gaston testified he knew the MDT records location, but he was "not sure about the speed." Gaston testified he was told the MDT "records location and your speed," but he was "looking at other papers" and noticed "the speed that is showing is not correct." The MDT in Gaston's truck provided information on the truck's location and speed on the day of the accident up until approximately 3:00 p.m. and then the information stopped until approximately 1:00 or 2:00 a.m. Gaston testified the only way the data would not be recorded was if the MDT was unplugged, but it was not unplugged.

Gaston testified he kept a logbook in which he recorded the times he drove, and Greenwood had an obligation to monitor his logbook and make sure he was complying with federal requirements concerning rest periods. In his logbook entry for the day of the accident, which Gaston filled out four days later, he did not record the accident. Gaston testified he "falsified the log." On the day of the accident, Gaston's truck was pulling "doubles," two twenty-eight-feet-long trailers. The only training he received from Greenwood concerning doubles was "how to connect them." After that, Gaston "learn[ed] how to operate the Doubles by getting out on the road and getting experience."

Bush introduced the deposition testimony of Thames Do, who testified that, on December 16, 2003, Gaston rear-ended him "on the rear of the left side and caused the damage on the left rear side, you know, in the signal lights." After the accident, Do stopped on the side of the freeway and waited for "the driver of the semi truck to stop it," but the driver did not stop. Do followed the truck "for several miles at least" and recorded the license number of the truck. Meanwhile, Do was honking his horn and flashing his lights, but the truck did not stop. The next day, Do filed a police report and contacted Greenwood. After Do sent Greenwood an estimate

for repair of the damage, pictures of the damage, "the serial number of the truck and everything, Greenwood denied Do's claim. Do sued Greenwood in Dallas small claims court, and Greenwood offered to settle his claim. Greenwood determined the accident between Gaston and Do was "preventable" and notified Gaston of this determination in February 2004.

Oscar Reyna testified that, in April 2007, he was driving on a bridge on Interstate 20 when Gaston came up behind him, jackknifed his trailer, and hit Reyna from behind, causing Reyna to hit the vehicle in front of him. Gaston was ticketed for failure to control speed. Again, Greenwood notified Gaston the accident was ruled as "preventable" by Greenwood.

Whitney Morgan testified he audited Gaston's logs "not only for what the logs say on the face of the log for completeness purposes but also against any time or date relevant operational documents of the motor carrier." Morgan described "pattern logging" as "a term of art in the industry that deals with information on the driver's log that is the same on each log, each day, day in and day out." Morgan reviewed Gaston's logs relating to a five-month period and found pattern logging was present: Gaston was "averaging the exact same speed every single day that he drove, 61 miles an hour." Morgan testified the presence of pattern logging was "a red flag" that "should give the carrier notice that there may be a problem with these logs."

The jury found (1) Gaston's negligence proximately caused the occurrence in question, and Bush's did not; (2) Gaston was 100% responsible for the occurrence; (3) Greenwood's negligence in entrusting a vehicle to an incompetent or reckless driver proximately caused the occurrence; (4) Greenwood's negligence in retaining or supervising an incompetent or unfit employee proximately caused the occurrence; (5) Greenwood was negligent in failing to provide training beyond that which was given, and such negligence was a proximate cause of the occurrence because the negligence of the driver whom Greenwood failed to properly train was a proximate cause of the collision; (6) the harm to Bush resulted from gross negligence attributable

to Gaston; and (7) the harm to Bush resulted from gross negligence attributable to Greenwood. The jury charge did not contain a spoliation instruction. In accordance with the jury's verdict, the trial court entered judgment awarding Bush $4,088,669.28 in actual damages, $50,000 in punitive damages, and interest. This appeal followed.

In his first issue, Gaston argues the trial court erred by not allowing him a jury of his peers, which denied appellants their right to a fair trial. Specifically, Gaston argues the trial court "struck for cause all jurors who would not affirmatively commit to award limitless non-economic damages to Bush." In addition, Gaston complains other venire members were stricken because "they generally question lawsuits and favor tort reform" or because they "had sympathies toward trucking companies." Gaston complains the trial court erred in allowing Bush to "systematically remove from the panel dozens of venire members she found unfavorable to her before ever having to utilize a single peremptory strike." Gaston argues this violated his right to due process and to a jury trial under the United States Constitution and the Texas Constitution, "by denying Gaston his right to a jury selected from a fair and reasonable cross-section of the community." Gaston argues none of the jurors stricken for cause "expressed a bias or prejudice because of their lack of commitment to a damages award."

Regarding the disqualification of jurors, the trial court stated the following:

The Court, I believe, made clear that with respect to the award of damages, that the Court was not considering those who had testified that they couldn't award millions of dollars for one thing or another as being disqualified, but that the Court was considering those who said they couldn't award, at all, certain types of damages, even if the evidence supported it, and they had an opportunity to have such a question. So, I do want to make clear that with respect to the cause challenges, that the Court did not consider any of those who said that they – to be disqualified, who said that they couldn't award hundreds of thousands of dollars, or whatever the question was, for certain types of – I think they were mental anguish and pain and suffering.

The record further reflects that, during voir dire, some of the stricken venire members, when asked whether the amount of money someone can recover in a lawsuit should be limited, agreed

"regardless of the evidence, the instructions of the Court, [they] would place [their] own cap on it." Other stricken venire members said they could not award damages for mental anguish or pain and suffering "regardless of the evidence or the instructions of the Court or the testimony and exhibits." Still others said they "could not award punitive damages regardless of whether the facts, evidence and the law allowed for it." Finally, one venireperson said he "generally d[id] not believe in lawsuits," and another said he had strong connections to the trucking industry and financial relationships with the trucking industry, and he could not "set aside [his] positive connections and beliefs about the trucking industry." Thus, contrary to Gaston's argument, the record reflects the stricken members of the venire said they could not award any damages for certain types of claims, regardless of the evidence or the trial court's instructions.

Further, Gaston did not object to the jury panel that was actually seated, only to the exclusion of the jurors stricken for cause. Even if challenges for cause are improperly sustained, no reversible error is presented unless appellant can show he or she was denied a trial by a fair and impartial jury. *Solomon v. Steitler*, 312 S.W.3d 46, 59 (Tex. App.—Texarkana 2010, no pet.); *City of Hawkins v. E.B. Germany & Sons*, 425 S.W.2d 23, 26 (Tex. Civ. App.—Tyler 1968, writ ref'd n.r.e.). Because Gaston did not object to any juror on the panel, it must be presumed that he was afforded a fair and impartial jury, and no harm could have resulted by reason of the court's dismissal of the jurors stricken for cause. *Solomon*, 312 S.W.3d at 59. We overrule Gaston's first issue.

In his second issue, Gaston argues the trial court's judgment should be reversed because "the trial court abused its discretion in admitting purported expert testimony that tainted the jury throughout the course of trial." Specifically, Gaston argues the trial court erred in admitting the police report and testimony of Officer Angela McCrory regarding causation. Gaston argues McCrory was not qualified to render opinions regarding accidents, she had no specialized

training or expertise in accident reconstruction, her opinions and report were not reliable, and there is "too great of a gap between the data relied on and her testimony."

Gaston also complains of the trial court's admission of testimony by accident reconstruction expert John Smith. Gaston argues Smith was "not qualified; his proposed testimony was not timely disclosed; and his testimony served no valid evidentiary purpose, is unreliable, would interfere with this Court's sole authority to instruct the jury as to controlling law and the jury's exclusive fact-finding responsibility, and is confusing, misleading, and otherwise unfairly prejudicial." In addition, Gaston argues Smith's testimony regarding destruction of evidence and MDT was speculative and should not have been considered by the jury, his video animation of the accident was not substantially similar to the accident, his accident reconstruction testimony was unreliable, and his testimony regarding the tarp not covering Bush's taillights lacked foundation and should have been excluded as unreliable. In its first issue, Greenwood also attacks Smith's testimony, incorporating Gaston's arguments concerning the inadmissibility of Smith's testimony generally and specifically attacking Smith's testimony regarding spoliation and arguing Greenwood had no duty to preserve and the trial court improperly barred the presentation of evidence to rebut Bush's accusations of spoliation.

Regarding spoliation, Greenwood argues *Brookshire Bros. v. Aldridge*, 438 S.W.3d 9, 29 (Tex. 2014) "categorically shows a spoliation instruction was never an available sanction remedy and Bush had no right to offer any spoliation evidence, much less hold a spoliation mini-trial." *Aldridge*, issued on July 3, 2014, held that evidence bearing solely on whether a party spoliated evidence or the party's degree of culpability in doing so did not relate to a fact of consequence to the determination of the action. *Id.* at 26. The court in *Aldridge* held that the trial court determines whether evidence was spoliated and the proper remedy. *Id.* at 19. The trial court may hold an evidentiary hearing to assist the court in making spoliation findings, but not in the

presence of the jury. *Id.* at 20. Thus, *Aldridge* stands for the proposition that the trial court alone, outside the presence of the jury, should make a determination regarding spoliation and a suitable remedy. *See id.* at 19-29. However, because Greenwood did not object on this basis at trial, it has waived its complaint that, under *Aldridge*, the trial court should not have permitted any spoliation evidence to come before the jury. *See St. Paul Lines v. Dal-Worth Tank Co.*, 974 S.W.2d 51, 53 (Tex. 1998) (even though case appellant relied on was not yet the law at time of trial, appellant was obliged to lodge a timely objection to preserve error).

Even if we were to apply *Aldridge* to the facts of this case, we would conclude the trial court did not err in admitting evidence of spoliation. Greenwood argues the following:

> The specific spoliation accusation at issue concerns a "gap" in available electronic data, which [Bush] first raised over a year before trial in simultaneously-filed motions to compel and for sanctions. [Greenwood] explained to the trial court [Bush] had no evidence spoliation occurred and affirmatively proved no data ever existed (as opposed to destruction of previously created/recorded data).

Thus, Greenwood's complaint focuses on the admission of evidence that the MDT on Gaston's truck only provided information on the truck's location and speed on the day of the accident up until approximately 3:00 p.m. and then the information stopped until approximately 1:00 or 2:00 a.m.

The court in *Aldridge* recognized that "all references to missing evidence, whether lost due to a party's spoliation or missing for some other reason, cannot and should not be foreclosed." *Aldridge*, 438 S.W.3d at 26. To the extent permitted by the Texas Rules of Evidence, parties may present indirect evidence to attempt to prove the contents of missing evidence that is otherwise relevant to a claim or defense, such as a person's testimony about the content of a missing document, photo, or recording. *Id.* We note *Aldridge* addressed a situation in which the trial court did submit a spoliation instruction, which the court characterized as "tantamount to a death-penalty sanction." *Id.* at 23. No spoliation instruction was submitted to

–9–

the jury in this case. Further, the existence of a "gap" in the MDT data that Gaston had to "assume" would have told "somebody" his speed at the time of the accident was relevant apart from any alleged spoliation. Bush argued, and the jury found, that Greenwood's negligence in retaining or supervising an incompetent or unfit employee proximately caused the occurrence. Even assuming Greenwood is correct that the "gap" evidence merely showed that no MDT data ever existed, such evidence would be relevant to show that Greenwood negligently supervised Gaston. Under these circumstances, we would conclude the trial court did not abuse its discretion in admitting evidence of the "gap" in the MDT data. *See id.* at 27.

A trial judge's decision to admit or exclude evidence is reviewed for abuse of discretion. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000). Unless the trial judge's erroneous evidentiary ruling probably caused the rendition of an improper judgment, we will not reverse the ruling. *Id.* An appellate court must uphold the trial judge's evidentiary ruling if there is any legitimate basis for it. *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). For an expert's testimony to be admissible, the expert witness must be qualified to testify about "scientific, technical, or other specialized knowledge," TEX. R. EVID. 702, and the testimony must be relevant and based upon a reliable foundation. *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 234 (Tex. 2010); *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 628 (Tex. 2002). An expert's testimony is relevant when it assists the jury in determining an issue or in understanding other evidence. TEX. R. EVID. 702. But, expert testimony based on an unreliable foundation or flawed methodology is unreliable and does not satisfy Rule 702's relevancy requirement. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 556–57 (Tex.1995) (discussing TEX. R. EVID. 702).

When the reliability of an expert's testimony is challenged, courts "'should ensure that the [expert's] opinion comports with the applicable professional standards.'" *Helena Chem. Co.*

*v. Wilkins*, 47 S.W.3d 486, 499 (Tex. 2001) (quoting *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 725–26 (Tex.1998)). To aid in that determination, the Texas Supreme Court has suggested several factors to consider when assessing the admissibility of expert testimony under Rule 702. The supreme court has emphasized, however, that these factors are non-exclusive, and that they do not fit every scenario. *TXI*, 306 S.W.3d at 235; *Gammill*, 972 S.W.2d at 726. These factors are particularly difficult to apply in vehicular accident cases involving accident reconstruction testimony. *TXI*, 306 S.W.3d at 235; *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 39 (Tex. 2007) (citing *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 802 (Tex. 2006)); *see also Gammill*, 972 S.W.2d at 727. Nevertheless, the court, as gatekeeper, "must determine how the reliability of particular testimony is to be assessed." *Gammill*, 972 S.W.2d at 726. Rather than focus entirely on the reliability of the underlying technique used to generate the challenged opinion, as in *Robinson*, it is appropriate in cases like this to analyze whether the expert's opinion actually fits the facts of the case. *TXI*, 306 S.W.3d at 235; *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 904–05 (Tex. 2004). In other words, we determine whether there are any significant analytical gaps in the expert's opinion that undermine its reliability. *TXI*, 306 S.W.3d at 235.

Expert testimony is unreliable when "'there is simply too great an analytical gap between the data and the opinion proffered.'" *Ledesma*, 242 S.W.3d at 39 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). Expert testimony is also unreliable if it is not grounded in scientific methods and procedures, but is rather based upon subjective belief or unsupported speculation. *Coastal Transp. Co. v. Crown Cent. Petrol. Corp.*, 136 S.W.3d 227, 232 (Tex. 2004). Expert testimony lacking a proper foundation is incompetent, *City of Keller v. Wilson*, 168 S.W.3d 802, 813 (Tex. 2005), and its admission is an abuse of discretion. *Cooper Tire*, 204 S.W.3d at 800. The court's ultimate task, however, is not to determine whether the expert's

conclusions are correct, but rather whether the analysis the expert used to reach those conclusions is reliable and therefore admissible. *Zwahr*, 88 S.W.3d at 629 (citing *Gammill*, 972 S.W.2d at 728).

McCrory testified by video deposition that she attended the Weatherford Police Academy and received training on accident investigation. Bush's accident was "one of [McCrory's] first major accidents," and McCrory had a field training officer supervising her and looking over all of her final reports, including her report in this case. In response to questioning, McCrory agreed that Gaston's truck required more distance to stop than an ordinary passenger vehicle, and Gaston violated the transportation code by failing to keep a safe distance from Bush's vehicle and failing to drive at a speed that would have allowed him to avoid running into Bush's vehicle. McCrory testified she was required to investigate accidents and create accident reports to help identify who was at fault in causing collisions. McCrory testified she created the accident report in this case as part of her duties as an officer for a public agency. McCrory testified it was raining, there was snow on the side of the road, and the speed limit was 55 where the collision occurred. When McCrory arrived at the scene, she saw Bush's truck upside down and Gaston's truck jackknifed "in the bar ditch." Gaston told McCrory that he did not see the small truck ahead of him, and he tried to veer off as soon as he saw it. McCrory testified Gaston did not tell her that Bush did anything that caused or contributed to the collision. McCrory testified she believed the weather conditions contributed to the collision, but if Gaston had controlled his speed there would not have been an accident. Based on her conversations at the scene with Bush and Gaston, McCrory did not believe Bush was "in any way at fault for causing or contributing to the collision."

Accident reports are admissible under Rule 803(8) as exceptions to the hearsay rule. TEX. R. EVID. 803(8). Rule 803(8) provides for the admissibility of records, reports, statements, or data compilations, in any form, of public offices or agencies setting forth:

> (A) the activities of the office or agency;
>
> (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding in criminal cases matters observed by police officers and other law enforcement personnel; or
>
> (C) in civil cases as to any party and in criminal cases as against the state, factual findings resulting from an investigation made pursuant to authority granted by law;
>
> unless the sources of information or other circumstances indicate lack of trustworthiness.

TEX. R. EVID. 803(8). There is no evidence to show a lack of trustworthiness. Thus, the police report McCrory prepared was admissible. *See id.* Further, there is no analytical gap between the data and the opinions McCrory proffered. *See Ledesma*, 242 S.W.3d at 39. The data was that it was dark and raining, there was snow on the side of the road, the collision took place in a construction zone where the speed limit was lowered to 55, and the collision consisted of Gaston rear-ending Bush's truck. There was no analytical gap between this data and the opinion that Gaston caused the collision by failing to control his speed. *See id.* The trial court did not abuse its discretion in admitting McCrory's report and testimony.

Smith is a licensed professional engineer specializing in accident investigation, accident reconstruction, and biomechanics including analysis of injury, causation, and occupant kinematics. Smith testified he has performed over 2300 accident reconstructions, 1500 to 2000 biomechanical analyses, and "over a thousand" analyses of rear impacts. Smith testified GPS data "absolutely" plays a role in accident reconstruction and provides information concerning speed, "paths vehicles took," and a vehicle's starting point. In 1985 or 1986, Smith was "one of the first people in the world to use GPS" under the auspices of the Defense Mapping Agency, of

–13–

which Smith was a graduate. Smith testified the MDT used a "differential GPS" system that "track[ed] things based on two given locations" and was able to determine speed. Smith reviewed the deposition of Mark Vance, former "director of MDT" at Greenwood, and the MDT user manual and mechanic's manual. Smith reviewed data from the MDT in Gaston's truck and found data missing from "after lunch" on the day of the accident until after the accident at 10:09 p.m. The data loss occurred exactly at the end of a page, which "didn't seem right" to Smith. Smith testified the odds were "1 and 100 million" of a "catastrophic malfunction" of the MDT occurring simultaneously with a page break and a collision. Thus, Smith contended, the "evidence went missing at the hands of" Greenwood.

Smith also reviewed photographs of the vehicles, "tire marks on the roadways," "what the people had to say about how the collision occurred," the police report, and medical records. Smith also "looked at the scene and the slope of the scene and what the roads are made out of." Smith applied the collected data "to scientific principles and engineering principles in order to come up with" his opinions and the animation he created. Smith concluded the damage to Bush's truck was "consistent and indicative of a rear-end collision of high speed." To the extent Smith testified concerning a tarp not covering Bush's taillights, such testimony merely echoed Bush's own testimony. Further, as Smith stated, the issue of whether Gaston saw Bush's taillights was not relevant because Gaston testified he saw Bush's truck. In fact, Gaston testified Bush's taillights were not covered by a tarp. Considering Smith's qualifications and the support his testimony found in the evidence, we conclude the trial court did not abuse its discretion in allowing his testimony. *See Auld*, 34 S.W.3d at 906.

To the extent Greenwood argues it had no duty to preserve MDT data, Greenwood supports this argument by stating it offered evidence that "no data was ever recorded, such that there was no evidence to preserve." First, whether or not Greenwood had a duty to preserve, the

point of Smith's testimony was that only the data from the time surrounding the accident was missing, and this indicated the relevant data had been intentionally removed. Second, Smith addressed the issue of the MDT failing to record only at the time surrounding the collision and testified the odds were "1 and 100 million" of the failure occurring at the end of a page and at the time of a collision. Greenwood further argues it was barred from offering rebuttal evidence that would have shown the MDT was "malfunctioning before, at the time of, and after the accident due to a power supply problem." In support of this argument, Greenwood cites several pages of the record generally. At one point in the cited pages, the judge states, "I have already excluded the notion that [the MDT] didn't record as the answer, it is possible to advance the notion that it is an explanation, but not that here is the answer." While it is not entirely clear, it appears the court's ruling did not preclude Greenwood from raising the issue that the MDT did not record. We find no abuse of discretion. *See id.* We overrule Greenwood's first issue.

As to the video animation, we note the video was not admitted into evidence but was shown during Smith's testimony for demonstrative purposes. Defense counsel objected "on the grounds of 403." Smith testified he measured Gaston's truck and two similar trailers "in order to get data to fill in the animation." It was not possible to "match tire to track," but Smith made a generalized analysis of marks on the roadway he described as an "approximation." Smith testified the animation was not a simulation and "not an exact replication of what happened," but it was "an accurate representation of what occurred." Earlier in the trial, Smith was allowed to express his underlying opinion without objection when the testimony was presented to the jury. Since the animation was a graphic depiction of the opinion admitted into evidence without objection, Greenwood's trial objection to the video depiction of that opinion was waived. *N. Am. Van Lines, Inc. v. Emmons*, 50 S.W.3d 103, 130 (Tex. App.—Beaumont 2001, pet. denied). Video animation and other demonstrative evidence that "summarize, or perhaps emphasize,

–15–

testimony are admissible if the underlying testimony has been admitted into evidence, or is subsequently admitted into evidence." *Id.* (quoting *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 342 (Tex. 1998)). We overrule Gaston's second issue.

In its second issue, Greenwood argues the trial court abused its discretion in allowing Morgan to testify that Gaston was a "habitual speeder," he engaged in "pattern logging," he was reckless, and he had a history of rear-end collisions. Greenwood argues Morgan's testimony "failed reliability and relevance, interfered with the trial court's sole instructing-the-jury-on-the-law authority and the jury's exclusive fact-finding responsibility and was confusing, misleading, and unfairly prejudicial." Greenwood further argues the trial court abused its discretion in admitting Morgan's testimony that Greenwood failed to monitor, train, or supervise Gaston and that Greenwood's failure to follow internal company policies and procedures was "tantamount to negligence."

Our ultimate task is not to determine whether an expert's conclusions are correct, but rather whether the analysis the expert used to reach those conclusions is reliable and therefore admissible. *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 239 (Tex. 2010). Upon his graduation from college in 1975, Morgan went to work for the U.S. Department of Transportation. He trained at the Transportation Safety Institute in Oklahoma City. As part of that job, Morgan investigated and reconstructed "catastrophic-type commercial motor vehicle accidents and hazardous material accidents." Morgan also performed "safety compliance reviews of all different types of motor carriers and shippers who shipped or transported hazardous materials." At the time of trial, Morgan testified he had "almost 40 years" of experience with "the laws, the rules, safety rules, and things like that, as applied to a trucking company."

Morgan reviewed Gaston's logs relating to a five-month period and testified the logs showed "pattern logging" was present: Gaston averaged the same speed every day he drove. The

presence of pattern logging, he testified should have given Greenwood notice that there might be a problem with the logs. Had Greenwood audited the logs and discovered the pattern logging, under its policies and procedures it "would warrant disciplinary action up to and including termination." In addition, GPS data Morgan reviewed showed Gaston exceeded 73 miles per hour sixty-three times and that was not, in Gaston's opinion, the driving pattern of a reasonably prudent truck driver. Morgan testified it was his opinion that Greenwood improperly entrusted to Gaston the tractor-trailer that hit Bush "due to his history." The record shows Morgan's testimony was based on information maintained by Greenwood and Greenwood's own policies and procedures. We conclude Morgan's analysis, based on that information, was reliable and therefore admissible. *See Hughes*, 306 S.W.3d at 239. The trial court, therefore, did not abuse its discretion in admitting Morgan's testimony. *See Auld*, 34 S.W.3d at 906. We overrule Greenwood's second issue.

In its fourth issue, Greenwood argues the trial court erred in admitting the "preventability assessments" showing Greenwood determined this accident and accidents in 2003 and 2007 were "preventable." The documents at issue are internal Greenwood-generated documents sent to Gaston determining the accidents in question were preventable and asking Gaston to sign either in agreement or disagreement with that determination. The documents were admitted as admissions by a party opponent. Rule 801(e)(2) is straightforward: subject to other Rules of Evidence that may limit admissibility, any statement by a party-opponent is admissible against that party. TEX. R. EVID 801(e)(2); *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 235 (Tex. 2007). Under these circumstances, we conclude the trial court did not abuse its discretion in admitting the preventability assessments. *See Auld*, 34 S.W.3d at 906. We overrule Greenwood's fourth issue.

–17–

In its fifth issue, Greenwood argues the trial court erred in allowing Bush's counsel, in his opening statement and during the questioning of a witness, to call Greenwood a "billion-dollar corporation." The record indicates Bush's counsel, during his opening statement, described Greenwood as a company with "billions of dollars a year in revenue" and a "billion-dollar corporation." During his questioning of Morgan, Bush's counsel once again identified Greenwood as a "billion-dollar company." Greenwood did not make a timely objection to any of the three instances where Bush's counsel referred to it as a "billion-dollar corporation." Appellate complaints of improper jury argument must be preserved by timely objection and request for an instruction that the jury disregard the improper remark. TEX. R. APP. P. 33.1; *Phillips v. Bramlett*, 288 S.W.3d 876, 883 (Tex. 2009). Because Greenwood's objections were not timely, we conclude this issue is not preserved for our review. *Phillips*, 288 S.W.3d at 883. We overrule Greenwood's fifth issue.

In his fourth issue, Gaston argues the trial court abused its discretion in admitting a "summary" of Gaston's testimony. Specifically, Gaston argues the admission of an exhibit summarizing his testimony violates rule of evidence 1006, which provides for the admission of summaries of voluminous materials. TEX. R. EVID. 1006. However, Gaston's counsel objected to the admission of the summary by saying "It's not evidence. He's testified." Because Gaston did not raise his complaint regarding rule 1006 at trial, he has not preserved this issue for our review. *See* TEX. R. APP. P. 33.1(a)(1); *Keith v. Wells Fargo Bank, N.A.*, 285 S.W.3d 588, 590 (Tex. App.—Dallas 2009, no pet.). We overrule Gaston's fourth issue.

In his fifth issue, Gaston argues the trial court abused its discretion by excluding video and photographic materials his expert, Robert Swint, relied upon in forming his opinions. Swint testified he had analyzed "between 700 and 1000" tractor-trailer accidents. Swint testified he saw no evidence of a rear impact between a tractor trailer and Bush's truck. Gaston's counsel

stated he had some "short videos" about testing Swint performed with the Minnesota Department of Transportation and photographs of a pickup truck involved in a rear-end collision. The trial court questioned defense counsel and determined the testing "was not done in relation to this accident," and the photograph was "not the same pickup truck, make and model, as involved in the Bush Gaston accident." The trial court concluded the videos and photographs were "not relevant based on [their] dissimilarity to the case at bar." Gaston does not dispute that the videos and photographs did not depict the same or similar vehicles involved in the accident in this case. *See Waldrip*, 380 S.W.3d at 134 (concluding expert testimony not sufficiently similar to truck at issue distracted jury). We conclude the trial court did not abuse its discretion in excluding the videos and photographs. *See Auld*, 34 S.W.3d at 906. We overrule Gaston's fifth issue.

Gaston further argues the trial court abused its discretion in excluding evidence of Gaston's good driving record after the accident. Gaston made an offer of proof that he had not had "any speeding tickets or accidents since December 5, 2011." The trial court excluded this testimony as "irrelevant." We agree. Gaston has not demonstrated in what way Gaston's driving record following the accident was relevant to the issues arising out of the accident itself. The trial court did not abuse its discretion in excluding this evidence. *See id.*

In his sixth issue, Gaston argues the trial court abused its discretion in admitting evidence of prior bad acts allegedly committed by Gaston. Specifically, Gaston complains of the admission of evidence regarding a speeding ticket he received in his personal vehicle, his disciplinary record, allegations of pattern logging, and accidents allegedly occurring in 2003 and 2007. One of Bush's theories was that Greenwood negligently entrusted the tractor trailer to Gaston. One issue in determining negligent entrustment was whether Greenwood knew or should have known that Gaston was unlicensed, incompetent, or reckless. *Williams v. Steves Indus., Inc.*, 699 S.W.2d 570, 571 (Tex. 1985). Thus, the complained-of evidence of bad acts

were relevant to Greenwood's knowledge of Gaston's recklessness. *See id.* The trial court did not abuse its discretion in admitting this evidence. *See Auld*, 34 S.W.3d at 906.

In his seventh issue, Gaston argues the trial court abused its discretion by "allowing Bush to make an improper and prejudicial argument about the details of a prior case involving Robert Swint and Appellants' counsel." On cross-examination, Bush's counsel asked Swint about his expert testimony in another case involving the issue of "a phantom truck appearing out of nowhere and killing somebody." Swint answered that "The phantom truck didn't kill anybody." Counsel asked whether Swint's testimony "involved some phantom truck." Swint answered that "there was testimony to that," and his opinion was the accident in that case was consistent with someone "not falling asleep but avoiding an event. And that was consistent with a phantom vehicle." Counsel asked if it was "the phantom vehicle that caused it in [his] opinion," and Swint answered, "I think so." Defense counsel did not object to this line of questioning.

In his closing argument, Bush's counsel again referred to the "phantom truck that killed the preacher" and stated Swint "testified about a phantom truck six weeks ago." Defense counsel objected that this was outside the record and had nothing to do with this case, and constituted improper argument. The trial court stated, "I believe that he testified about another case" and instructed Bush's counsel to "move along." Bush's counsel again stated that "the phantom truck came up six weeks ago," and defense counsel addressed the court. The trial court told defense counsel "he testified about that," and concluded, "Overruled." Once the evidence was in the record—without objection or a request that it be stricken or that the jury be instructed to disregard—it was in for all purposes and a proper subject of closing argument. *In re Toyota Motor Sales, U.S.A., Inc.*, 407 S.W.3d 746, 760 (Tex. 2013). Thus, the trial court did not abuse its discretion in allowing Bush's counsel to raise the "phantom truck issue" in closing argument. *See id.*; *Auld*, 34 S.W.3d at 906. We overrule Gaston's seventh issue.

–20–

In Gaston's first issue and Greenwood's third issue, they attack the legal and factual sufficiency of the evidence to support the jury's verdict. Specifically, Gaston challenges (1) the jury's finding that the harm to Bush resulted from gross negligence committed by Gaston and attributable to Greenwood and (2) the jury's findings that Gaston's negligence proximately caused the occurrence in question, Bush's negligence did not proximately cause the occurrence, and Gaston was 100% responsible for the occurrence. Greenwood also challenges the jury's finding regarding gross negligence and the findings that Greenwood's negligence proximately caused the occurrence under negligent entrustment, negligent supervision/retention, and negligent training theories. Neither Gaston nor Greenwood challenges the sufficiency of the evidence to support Bush's actual damages.

We note Greenwood also argues "The Separation of Powers Doctrine proscribes an imposition of exemplary damages in the current circumstances." However, Greenwood fails to support this two-paragraph argument with any citation to the record or to legal authority. Failure to cite applicable authority or provide substantive analysis waives an issue on appeal. *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.). Accordingly, we will not further address this argument.

When a party attacks the legal sufficiency of an adverse finding on an issue on which the party has the burden of proof, such as whether Bush's negligence proximately caused the occurrence, the party must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). When a party attacks the legal sufficiency of the evidence on which the party did not have the burden of proof, such as whether Gaston was grossly negligent and his gross negligence was attributable to Greenwood, the party must demonstrate that there is no evidence to support the adverse findings. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983); *EMC Mortg. Co. v.*

–21–

*Jones*, 252 S.W.3d 857, 866 (Tex. App.—Dallas 2008, no pet.). In reviewing a no evidence challenge, we consider the evidence "in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005); *Jones*, 252 S.W.3d at 866. We are not permitted to weigh the evidence or make credibility determinations. *Jones*, 252 S.W.3d at 866. The jury's finding on an issue may be upheld on circumstantial evidence as long as it may fairly and reasonably be inferred from the facts. *Id.* If there is more than a scintilla of evidence to support the finding, the no evidence challenge fails. *Id.*

When an appellant challenges the factual sufficiency of the evidence on an issue, we consider all the evidence supporting and contradicting the finding. *Fulgham v. Fischer*, 349 S.W.3d 153, 157-58 (Tex. App.—Dallas 2011, no pet.) (citing *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989)). We set aside the finding for factual insufficiency only if the finding is so contrary to the evidence as to be clearly wrong and manifestly unjust. *Id.* (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam)). The factfinder is the sole judge of the credibility of the witnesses. *Id.* As long as the evidence falls "within the zone of reasonable disagreement," we will not substitute our judgment for that of the fact-finder. *Id.* (quoting *City of Keller*, 168 S.W.3d at 822).

In reviewing an award for exemplary damages, we conduct a legal sufficiency review under the "clear and convincing" evidence standard. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012) (citing *S.W. Bell Telephone Co. v. Garza*, 164 S.W.3d 607, 609 Tex. 2004)). "Clear and convincing' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(2); I*n re J.F.C.*, 96 S.W.3d 256, 264

(Tex. 2002). Gross negligence consists of both objective and subjective elements. *See Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001). Plaintiffs must prove by clear and convincing evidence that 1) when viewed objectively from the defendant's standpoint at the time of the event, the act or omission involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others and 2) the defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others. *See id.*; TEX. CIV. PRAC. & REM.CODE § 41.001(11); *State v. Shumake*, 199 S.W.3d 279, 287 (Tex. 2006) (citing *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 21 (Tex. 1994)).

Under the objective component, "extreme risk" is not a remote possibility or even a high probability of minor harm, but rather the likelihood of the plaintiff's serious injury. *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998); *Harrison*, 70 S.W.3d at 785. The subjective prong, in turn, requires that the defendant knew about the risk, but that the defendant's acts or omissions demonstrated indifference to the consequences of its acts. *La.-Pac. Corp. v. Andrade*, 19 S.W.3d 245, 246–47 (Tex. 1999); *Wal–Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 326 (Tex. 1993).

Both Gaston and Greenwood premise their sufficiency challenges on the exclusion of McCrory's, Smith's, and Morgan's testimony, arguing their testimony constituted "no evidence." We have already concluded the trial court did not abuse its discretion in admitting the testimony of McCrory, Smith, and Morgan. The record shows Bush testified she was driving "a few" below the speed limit in the right lane when Gaston rear-ended her truck, causing it to flip over and injuring her. Gaston admitted rear-ending Bush. Greenwood stipulated that Greenwood was Gaston's "statutory employer" and there was "no dispute about the respondeat superior, Greenwood for Gaston."

McCrory testified Gaston violated the transportation code by failing to keep a safe distance from Bush's vehicle and failing to drive at a speed that would have allowed him to avoid running into Bush's vehicle. Based on her conversations at the scene with Bush and Gaston, McCrory did not believe Bush was "in any way at fault for causing or contributing to the collision." We conclude this evidence was legally and factually sufficient to support the jury's findings that Gaston's negligence proximately caused the occurrence in question, Bush's negligence did not proximately cause the occurrence, and Gaston was 100% responsible for the occurrence. *Jones*, 252 S.W.3d at 866; *Fulgham*, 349 S.W.3d at 157-58.

Regarding the jury's gross negligence finding, the evidence showed it was raining and there was snow by the side of the road when the accident occurred at approximately 9:30 p.m. in a construction zone where the speed limit was reduced to 55 miles per hour. GPS data Morgan reviewed showed Gaston had exceeded 73 miles per hour sixty-three times previously, and McCrory testified if Gaston had controlled his speed there would not have been an accident. Gaston was not qualified to operate the "doubles" he was driving. Twice before, in 2003 and 2007, Gaston had rear-ended other vehicles. Greenwood was aware of both prior accidents and determined both accidents were "preventable." Gaston engaged in "pattern logging," and this should have given Greenwood "notice that there may be a problem with these logs." Morgan testified it was his opinion that Greenwood improperly entrusted to Gaston the tractor-trailer that hit Bush "due to his history." We conclude this evidence was legally and factually sufficient to prove by clear and convincing evidence that Gaston was grossly negligent in the operation of his truck and that Greenwood was grossly negligent in entrusting the truck to Gaston, failing to supervise him, retaining him as a driver, and failing to adequately train him. *See Harrison*, 70 S.W.3d at 785; *Jones*, 252 S.W.3d at 866; *Fulgham*, 349 S.W.3d at 157-58. We overrule Gaston's first issue and Greenwood's third issue.

We affirm the trial court's judgment.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

141148F.P05



# Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

GREENWOOD MOTOR LINES, INC. D/B/A R+L CARRIERS AND STEVEN C. GASTON, Appellants

No. 05-14-01148-CV     V.

BOBBIE BUSH, Appellee

On Appeal from the 298th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-11-16041-M.
Opinion delivered by Justice Bridges.
Justices Stoddart and O'Neill participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee BOBBIE BUSH recover her costs of this appeal from appellant GREENWOOD MOTOR LINES, INC. D/B/A R+L CARRIERS AND STEVEN C. GASTON.

Judgment entered this 28th day of April, 2017.